**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAMES WATLINGTON,         :

                         :    Civil Action No. 04-942 (MLC)

            Petitioner,   :

                         :

            v.             :    **OPINION**

                         :

ROY L. HENDRICKS, et al.,   :

                         :

            Respondents.   :

**APPEARANCES:**

    JAMES WATLINGTON, Petitioner <u>pro</u> <u>se</u>
    New Jersey State Prison
    #66284/783059A
    P.O. Box 861, Trenton, New Jersey 08625

    LISA A. PUGLISI, ESQ.
    OFFICE OF NEW JERSEY ATTORNEY GENERAL
    Richard J. Hughes Justice Complex
    25 Market Street, P.O. Box 112, Trenton, New Jersey 08625
    Attorney for Respondents

**COOPER**, District Judge

    Petitioner James Watlington, a prisoner confined at New Jersey State Prison, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the respondents' decision to deny parole and impose a 20-year future eligibility term.  For the reasons stated herein, the petition will be denied for failure to state a federal constitutional deprivation.

## I.  BACKGROUND

    On September 18, 1980, James Watlington ("Watlington") pled guilty to criminal homicide for the drowning of his two-year old

son.  Watlington was sentenced in 1981 to life imprisonment with 18 years parole ineligibility.[1]

Watlington became eligible for parole on August 3, 1998. (Ra72).[2]  Watlington's case was reviewed in preparation for a parole hearing on May 15, 1998, and was deferred until June 3, 1998 for clarification of Watlington's history.  (Ra26-Ra28, Ra30).  At that time, Watlington was informed that his parole hearing would be scheduled as soon as administratively possible. (Ra30).  On October 20, 1998, the Chairman of the Parole Board notified Watlington by letter that he was required to submit to a psychological evaluation.  (Ra31).  Watlington received in-depth psychological evaluations from February 19, 1999 through July 15, 1999.  (Cra84).[3]  A confidential major crimes summary of

---

[1]  The sentencing court based its decision as follows:

The nature of the crime and defendant's history of a prior North Carolina homicide and an Essex County, New Jersey atrocious assault and battery indicate this defendant is a dangerous person.  His psychiatrist, Dr. Kuvin, confirms his potential dangerous nature. Incarceration and minimum parole eligibility, therefore, are necessary to punish the defendant and isolate him from the community.  Furthermore, he should not be paroled at anytime unless he has demonstrated an ability to control his impulses and explosive nature. (Resps.' Appendix ("Ra"), J. of Conv., Stmt. of Reasons under R. 3:21-4(e), dated April 14, 1981, Ra2).

[2]  "Ra" connotes the respondents' appendix submitted with the answer to the petition.

[3]  "Cra" refers to the Confidential materials submitted with the respondents' appendix, namely, the Hunterdon County Prosecutor's Office Investigation Report, Confidential transcript of police interview, Confidential Adult Pre-Sentence Reports,

Watlington's case, dated March 17, 2000, was prepared and submitted for petitioner's pending parole hearing.

On March 20, 2000, Watlington appeared before a two-member panel of the Parole Board.  The panel denied Watlington's release on parole for the following reasons: (1) extensive prior criminal record; (2) nature of criminal record increasingly more serious; (3) presently incarcerated for a multi-crime offense; (4) failure of prior opportunities on parole; (5) prior incarcerations failed to deter criminal behavior; (6) commission of serious institutional infractions while incarcerated; and (7) failure to address his substance abuse problems.  The panel found one mitigating factor, namely, that Watlington had participated in institutional programs.  But the panel concluded that Watlington will likely recidivate if released on parole, and that the standard FET was inappropriate in this case.  (Ra33).  Accordingly, the panel referred the matter to a three-member panel for determination of a future parole eligibility term ("FET") outside the presumptive FET, pursuant to N.J.A.C. 10A:71-3.21(d).  (Ra33).

On July 26, 2000, the three-member panel held a hearing and affirmed the two-member panel's decision to deny parole.  The panel established a 40-year FET, and issued a pre-printed notice

---

various confidential psychological evaluations, remarks, and memoranda and addendum from 1980 through 2001, a Confidential Major Crimes Summary with attachments, a Confidential Criminal History dated May 8, 2001, and Confidential Victim Input letters.

of decision, rather than a detailed explanation for establishing the extended FET as required by N.J.A.C. 10A:71-3.21(d).  (Ra52).[4]

It appears from the record that Watlington filed an administrative appeal challenging the decisions of both the two-member panel and the three-member panel denying parole, the panel's failure to consider material facts, and the three-member panel's failure to comply with the requirements under N.J.A.C. 10A:71-3.21(d), namely, the requirement that the three member panel state the reasons in writing for an extended FET.  The Parole Board issued a decision on December 1, 2000, and affirmed the decision of the two-member panel.  But the Parole Board agreed with Watlington that a detailed Notice of Decision regarding the three-member panel's July 26, 2000 decision to deny parole and establish an extended FET was required, and informed petitioner that once a detailed decision was issued, he could then pursue the appropriate appeal regarding the decision.  (Ra53-Ra55).

On June 27, 2001, the three-member panel elected to modify Watlington's FET from 40 years to 20 years.  (Ra57).  Thereafter, on July 12, 2001, the Parole Board issued a nine-page Notice of Decision explaining the reasons, as determined by the three-member panel, for denying parole and establishing an extended 20-year FET. (Ra58-Ra66).  In particular, the three-member panel

---

[4]   The pre-printed form noted Watlington's unfavorable panel interview, which showed his lack of insight into his criminal behavior.  The panel also considered confidential material in reaching its determination.  (Ra52).

noted Watlington's criminal record containing acts of extremely violent behavior that became increasingly more violent.  For example, at age 20, Watlington killed a man over a card game, at age 33, he nearly killed a man by shooting him over a ten dollar loan, at age 35, he killed his two-year old son by tying a weight to the boy's neck and drowning him in a lake, and at age 49, petitioner severely beat a corrections officer.  (Ra58-61).  The panel further noted that Watlington murdered his two-year old son while he was released on bail for the 1978 shooting of a man over a $10.00 loan.  (Ra65).

The panel also noted that Watlington's answers at his parole hearing failed to reveal any insight into his criminal behavior, and that he blamed substance abuse problems for his crimes, although he was not intoxicated when he severely beat a correctional officer in 1986.  (Ra 63).  In fact, Watlington blamed the attack on the correctional officer, accusing the officer of being gay and "working on [petitioner]".  (Ra86).  Further, Watlington continually averted the panel's questions during the parole hearing about the underlying cause of Watlington's criminal behavior.  (Ra77-91).  Finally, the panel found that Watlington had not sufficiently addressed his alcohol abuse problem.  Petitioner had participated in some programs while incarcerated, but his inability to communicate and express coping mechanisms offered in the programs rendered his participation

meaningless.  (Id.).  Moreover, Watlington has not addressed his
inability to control his temper, and the confidential reports
reviewed by the panel indicate that it would take a significant
period of time to work through his violent behavioral issues.
(Ra63).  Therefore, the panel recommended a 20-year FET with a
case review every 2½ years to monitor Watlington's progress as to
the issues cited in his psychological evaluations.  (Ra57-Ra58).

Watlington filed an administrative appeal to the Parole
Board, alleging violations of state and federal law.  (Ra72-
Ra76).  The Parole Board found no violations as alleged by
petitioner.  (Id.).  Therefore, on April 1, 2002, the full Parole
Board affirmed the panel's decision denying parole and setting a
20-year FET.  (Id.).  Watlington filed an appeal with the New
Jersey Appellate Division.  On June 17, 2003, the Appellate
Division affirmed the Parole Board by decision without discussion
of the merits.  The Appellate Division further concluded that
Watlington had received all the procedural due process to which
he was entitled, despite the delay in holding his parole hearing.
(Ra96-Ra98).  Watlington then filed a petition for certification
with the Supreme Court of New Jersey, which was denied on
November 17, 2003.  (Ra99).

On or about February 26, 2004, Watlington filed this federal
habeas petition.  After several extensions of time were granted,
the respondents answered the petition on September 7, 2004.

## II.  <u>STANDARD OF REVIEW OF § 2254 CLAIMS</u>

The Court recognizes that a <u>pro se</u> pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Thus, a <u>pro se</u> habeas petition should be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Duarte v. Hurley</u>, 43 F.Supp.2d 504, 507 (D.N.J. 1999).  Because Watlington is a <u>pro se</u> litigant, the Court will accord his petition the liberal construction intended for <u>pro se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> 28 U.S.C. § 2254(e); <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 122 S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

> (2)   resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause is referred to as the "contrary to" clause.  The second clause is the "unreasonable application" clause.  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  <u>See</u> <u>Werts</u>, 228 F.3d at 196-97;
<u>Matteo</u>, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached
a different result.  <u>Id</u>.  AEDPA prohibits such <u>de</u> <u>novo</u> review.
Rather, the federal habeas court must determine whether the state
court's application of Supreme Court precedent was objectively
unreasonable.  <u>Id</u>.  The federal court must decide whether the
state court's application of federal law, when evaluated
objectively and on the merits, resulted in an outcome that cannot
reasonably be justified under existing Supreme Court precedent.
<u>Id</u>.; <u>see</u> <u>also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  <u>Chadwick v.</u>

9

Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538
U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237
(2000)).  With respect to claims presented to, but unadjudicated
by, the state courts, however, a federal court may exercise pre-
AEDPA independent judgment.  See Hameen v. State of Delaware, 212
F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001);
Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

   Federal courts must apply a presumption of correctness to
factual determinations made by the state court.  See 28 U.S.C. §
2254(e)(1).  This presumption of correctness based upon state
court factual findings can only be overcome by clear and
convincing evidence.  See Duncan, 256 F.3d at 196.  Consequently,
a habeas petitioner "must clear a high hurdle before a federal
court will set aside any of the state court's factual findings."
Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

### III.  STATEMENT OF CLAIMS

   Watlington asserts that he was denied due process, in
violation of the Fourteenth Amendment, because his hearing for
parole eligibility was not held at least 90 days before the
expiration of his minimum prison term.  He also contends that the
Parole Board's decision was arbitrary and capricious, was not
supported by a preponderance of evidence in the record, and that
he was denied parole in retaliation for challenging the delay in
holding a hearing.

The respondents argue that the state court decision in this matter was not based on an unreasonable factual determination, nor did it result in an unreasonable application of clearly established federal law.  The State contends that the Parole Board did not abuse its discretion in denying parole and imposing a 20-year FET, that the decision was amply supported by the record, and that the parole proceedings complied with due process requirements.  Finally, the State argues that Watlington has failed to establish that the Parole Board retaliated against him for exercising his First Amendment rights.

IV.   ANALYSIS

As a preliminary matter, there is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause.  See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979).  See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F.Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. N.J. State Parole Board, 1992 WL 32329, at *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); N.J. State Parole Board v. Byrne, 93 N.J. 192, 203 (1983), aff'd, 975 F.2d 1553 (3d Cir. 1992).  These cases remain good law

11

even after taking into account the rule announced in <u>Sandin v.</u>
<u>Conner</u>, 515 U.S. 472, 484 (1995), that liberty interests created
by state law "will be generally limited to freedom from restraint
which, while not exceeding the sentence in such an unexpected
manner as to give rise to protection by the Due Process Clause of
its own force, nonetheless imposes atypical and significant
hardship on the inmate in relation to the ordinary incidents of
prison life." <u>See</u> <u>Watson v. DiSabato</u>, 933 F.Supp. 390, 392-93
(D.N.J. 1996).

The question remains what process is due.  The Supreme Court
of New Jersey has stated that

> Only a few basic procedures are required to deal with
> the risks of erroneous or arbitrary determinations in
> this context.  We conclude that the process required is
> notice of the pendency of the parole disposition, a
> statement by the objecting judge or prosecutor of the
> reasons why the punitive aspects of the sentence have
> not been fulfilled, and the opportunity for the
> prisoner to respond in writing to that statement of
> reasons.  No hearing, confrontation, or counsel issues
> are implicated here.

<u>Byrne</u>, 93 N.J. at 211.  <u>See also</u> <u>Watson</u>, 933 F.Supp. 390
(prisoner has liberty interest in parole decisions, including
notice of determination, statement by the government, and
opportunity for prisoner to submit written response).

A.    <u>The Parole Board's Decisions to Deny Parole and Impose a</u>
      <u>20-Year FET Was Not Arbitrary or Capricious and Was Amply</u>
      <u>Supported by the Record.</u>

Watlington contends that the Parole Board's decision to deny
parole and impose a 20-year FET violated his right to due process

because it was arbitrary and capricious and not supported by a preponderance of evidence in the record.  The State counters that the decision was amply supported by sufficient credible evidence and was not contrary to law.  The Court rejects petitioner's claims, finding that the Parole Board's decision denying parole and imposing a 20-year FET was objectively reasonable and in accordance with established law and administrative regulations.[5]

In a § 2254 proceeding, state-court determinations of factual issues shall be presumed to be correct and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  <u>See</u> <u>Meyers v. Gillis</u>, 93 F.3d 1147, 1149 n.1 (3d Cir. 1996).  Also, district courts are not to "second-guess parole boards" on federal habeas review, and the requirements of substantive due process are satisfied if there is some basis for the challenged decision.  <u>Hunterson v. DiSabato</u>, 308 F.3d 236, 246 (3d Cir. 2002); <u>Coady v. Vaughn</u>, 251 F.3d 480, 487 (3d Cir. 2001).

_____

[5]  Under the Parole Act of 1979, parole eligibility is predicated on likely recidivism alone.  "An adult inmate shall be released on parole ... unless information supplied in the report filed pursuant to [N.J.S.A. 30:4-23.54] or developed or produced at a hearing ... indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the law of this State if released on parole at such time."  N.J.S.A. 30:4-123.53a (amended 1997).  The standard was revised again in 1997; however, the 1997 amendment does not apply to inmates sentenced before its effective date.  <u>Trantino v. N.J. State Parole Bd.</u>, 331 N.J. Super. 577, 605 (App. Div. 2000), <u>aff'd in part, modified in part</u>, 166 N.J. 113 (2001).

13

Furthermore, "[t]he relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent'." Hunterson, 308 F.3d at 246-47.

At issue here is Watlington's general contention that the denial of parole and extended FET is arbitrary and unsupported by law and the record.  Pursuant to the Parole Act of 1979, the Parole Board may establish a Future Eligibility Term outside the guidelines if the guidelines term "is clearly inappropriate in consideration of the circumstances of the crime, the characteristics and prior criminal record of the inmate and the inmate's institutional behavior."  Williams v. N.J. State Parole Bd., 1992 WL 32329, at *5 (D.N.J. Feb. 4, 1992) (citing N.J.S.A. § 30:4- 123.56(b); N.J.A.C. § 10A:71-3.21(d)).  In N.J.A.C. 10A:71-3.21(d0, the Parole Board is required to consider specific enumerated factors in determining whether the presumptive FET term is inappropriate.  These enumerated factors are found at N.J.A.C. 10A:71-3.11(b), which lists 23 separate factors to be considered by the Parole Board in determining parole eligibility.[6]

_____

[6] N.J.S.A. 30:4-123.53(a) provides that, "An adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report ... or developed or produced at a hearing ... indicates by a preponderance of the evidence that the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole ... if released on

Section 10A:71-3.11(b) also permits consideration of "any other factors deemed relevant."

Here, it is clear from the record provided that the Parole Board considered substantial evidence that indicated a high probability of recidivism and that Watlington would likely violate conditions of parole if released.  Section 10A:71-3.11(b) specifically requires consideration of such factors as the commission of a crime while incarcerated; the commission of serious disciplinary infractions; the nature and pattern of previous convictions; adjustment to previous probation, parole and incarceration; the facts and circumstances of the offense, including aggravating factors surrounding the offense; a pattern of less serious disciplinary infractions; participation in institutional programs which could have led to the improvement of problems diagnosed at admission or during incarceration; mental and emotional health; and statements by the inmate reflecting on the likelihood that he or she will commit another crime.

In determining that there was a substantial likelihood that Watlington would commit a crime if released on parole, the Parole Board relied on Watlington's prior criminal record of increasingly more serious crimes, his present incarceration on a

_____

parole at that time."  The rule set forth in N.J.A.C. 10A:71-3.11, listing the factors to be considered in making parole decisions, was adopted to implement this statutory standard . In re Trantino Parole Application, 89 N.J. 347, 366 (1982).

multi-crime offense, his earlier failed opportunities on parole, his earlier incarcerations which failed to deter his criminal behavior, his commission of serious infractions in prison, and his failure to address his substance abuse problems.  (Ra33).

In particular, the Board found that Watlington minimizes his criminal behavior as evidenced by his panel interviews and his psychological evaluations.  For instance, Watlington remains detached and indifferent to his brutal crimes.  He referred to his son as "it", and when asked why he drowned his two-year old son, Watlington simply responded, "I just messed up."  (Cra115, Ra93).  When describing the murder of his life-long acquaintance, by hitting him in the head with a hammer, Watlington stated that he just "lost it."  (Cra68).  He further stated that "parole is a game and [he sees] inmates with charges released every day."  (Cra90).  Watlington also blames racial bias for the length of his sentence and his allegedly unfair treatment in the criminal justice system, saying that "a lot of people who are white do the same thing and don't go to jail."  (Cra115, Cra116).

Moreover, Watlington has failed to demonstrate any insight into his crimes that would help him change his impulsive and violent criminal behavior in the future and reduce the likelihood of recidivism.  Instead, he attributes his criminal behavior to alcohol abuse.  Watlington also called the murder of his young child a "mercy killing" and stated his motive for drowning the

two-year old child was to spite the baby's mother. (Cra90). He further blamed the correctional officer for his brutal attack by claiming that the beating was justified because the officer was gay. (Ra86, Cra59).

The Board also considered Watlington's failure to address his substance abuse and anger problems. Although Watlington claimed that he had attended Alcohol Anonymous in county jail, he could not recount any of the twelve steps. (Cra87). Further, Watlington blames alcohol abuse for his crimes, but has gained no insight as to what causes him to drink and has not learned any coping mechanisms to deal with his problems. Also, Watlington ignores his anger control problem and claims that he was only violent after drinking. (Ra78-Ra79). But the Board noted that Watlington was sober when he beat the corrections officer. The Board further justified its concern for Watlington's failure to address his alcohol and anger problems by noting that these problems led to two murders and two violent assaults. Thus, Watlington's inability or failure to address his alcohol and anger problems render him a high risk for recidivism of violent crimes. (Cra117).

The Board also considered Watlington's institutional infractions and his history of violent crimes. These matters involved increasingly serious offenses. First, he murdered a life-long acquaintance by beating him in the head with a hammer

17

because of a card game dispute.  Second, Watlington shot a person four times in the chest, abdomen and back because of an alleged $10.00 loan.  Third, the crime for which he is incarcerated involved the cruel and callous drowning of petitioner's very young child.  Finally, Watlington beat a corrections officer and broke his wrist.  (Ra58-Ra61).

Based on the record presented,[7] the Court finds that the Board properly weighed the factors outlined in N.J.A.C. 10A:71-3.11(b), including the minimal mitigating factors of Watlington's participation in institutional programs.  Further, there is more than a preponderance of the evidence, which included the criminal history summaries and the psychological evaluations, to support the Board's conclusion that there was a substantial likelihood of Watlington's recidivism if released on parole.

In affirming the denial of parole and extended FET, the Appellate Division found the Board's decision "was based on substantial evidence in the record comporting with the applicable legal principles."  (Ra98).  The court concluded:

> In sum, it was the Board's conclusion, based on appellant's pre-incarceration history, his institutional history, interviews with appellant and psychological evaluations that there was a substantial likelihood that appellant would commit a crime if released on parole at the time of his initial eligibility.  Since the record supports that

---

[7]  The Court carefully reviewed the confidential materials submitted and find that they substantially contributed to the Board's conclusion that there was a strong likelihood that Watlington would commit a crime if released on parole.

conclusion, we are obliged to defer to the Parole Board's
judgment.  As the Supreme Court explained in <u>Trantino v. New
Jersey State Parole Bd.</u>, 166 N.J. 113, 172-173 (2001), the
Board's decisions are highly individualized discretionary
appraisals requiring judicial deference if supported by the
record.  This decision was.

(Ra98).

Thus, the Appellate Division affirmed substantially for the
reasons set forth by the Parole Board.  This Court is in
agreement with the Appellate Division that the decision of the
Parole Board comports with state law and is supported by the
record.  This Court can discern no due process violation in the
denial of parole, and the 20-year FET is not so long as to shock
the conscience given Watlington's violent criminal history and
other relevant factors, which strongly suggest that he is likely
to recidivate if released on parole.  Further, Watlington has
failed to present clear and convincing evidence to rebut the
factual determinations of the Parole Board and the Appellate
Division, or to suggest that the Parole Board or Appellate
Division applied an incorrect standard in determining his
eligibility for parole.  Watlington's arguments that the Board's
decision was arbitrary and unreasonable is patently unsupported
by the record.  Thus, the Court concludes that the Parole Board's
denial of parole and imposition of a 20-year FET is not egregious
enough to "shock the conscience" or constitute arbitrariness in
violation of Miller's rights.  <u>See</u> <u>Hunterson</u>, 308 F.3d at 247-48.

19

This Court finds that the Parole Board's decision and the Appellate Division's decision were not based on an unreasonable determination of the facts in light of the evidence presented. The decision to extend the FET beyond the presumptive term was made consistent with the applicable state law, which included specific enumerated factors to guard against arbitrary decisions. Therefore, Watlington is unable to show a federal constitutional deprivation and he is not entitled to federal habeas relief on this particular claim.

B.  Delay in Holding Parole Eligibility Hearing

Watlington also asserts that the delay in holding his parole eligibility hearing deprived him of due process in violation of the Fourteenth Amendment.

New Jersey law provides that a parole eligibility hearing shall be conducted at least 30 days or as soon as practicable in advance of an inmate's actual parole eligibility date. N.J.A.C. 10A:71-3.17. Watlington's parole eligibility date was August 3, 1998. (Ra72). Accordingly, under the regulation, Watlington's hearing should have been held on or about July 4, 1998. The record shows that there was active preparation for a panel review of Watlington's case months before his parole eligibility date, as early as May 1998. These preparations included psychological evaluations and a detailed major crimes summary, which were required to make a determination as to the viability of parole

20

for Watlington.  However, these necessary events took some time

for completion and Watlington's parole eligibility hearing did

not occur until March 20, 2000, over 19 months after Watlington's

August 3, 1998 parole eligibility date.  The Court notes that

three days after the detailed major crimes summary was completed,

the Board panel commenced Watlington's hearing.

Watlington raised this claim on appeal from the Board's

denial of parole and the imposition of an extended FET.  The

Appellate Division found that "[t]he proceedings attendant upon

that request [for parole] accorded, in our view, with procedural

due process to which appellant was entitled despite the hearing

delay.  See, e.g., Dougherty v. N.J. State Parole Bd., 325

N.J.Super. 549, 552-53 (App. Div. 1999), certif. denied, 163 N.J.

77 (2000); Gerardo v. N.J. State Parole Bd., 221 N.J.Super. 442,

450-51 (App. Div. 1987)."[8]  (Ra97-Ra98).  The Appellate Division

further noted that the Board's decision held that Watlington's

_____

[8]  In Dougherty, the Parole Board had indefinitely postponed
a preliminary parole revocation hearing based on Dougherty's
refusal to participate.  Although the court held that the Board
should have conducted the hearing without Dougherty, the court
declined to release petitioner, finding that "[i]n the absence of
prejudice, the failure to conduct a timely hearing does not
entitle a prisoner to automatic release."  Dougherty, 325 N.J.
Super. at 555.  Likewise, in Gerardo, the court held that,
without any showing of prejudice, a delay in conducting a
rescission hearing does not entitle the prisoner to a reversal.
Gerardo, 221 N.J. Super. at 450-51.  See also Board of Trustees
of Youth Correctional Ctr. V. Davis, 147 N.J. Super. 540, 544-45
(App. Div. 1977)(without a showing of prejudice, the fact that a
hearing was not held until 71 days after a parolee was returned
to custody did not warrant a reversal).

future parole eligibility term would run from the primary
eligibility date (August 3, 1998), "thus obviating any potential
prejudice resulting from the delayed hearing."  (Ra98).

To be entitled to habeas relief, Watlington must demonstrate
that he was prejudiced by the delay in his first parole
eligibility hearing.  See Meador v. Knowles, 990 F.2d 503, 506
(9th Cir. 1993) (due process violation occurs only when the delay
is both unreasonable and prejudicial); Villarreal v. U.S. Parole
Comm'n, 985 F.2d 835, 837 (5th Cir. 1993) (154-day delay between
arrest and final hearing did not violate due process absent a
showing of prejudice); Heath v. U.S. Parole Comm'n, 788 F.2d 85,
89 (2d Cir. 1986) (predicating habeas relief upon a showing of
prejudice or bad faith), cert. denied, 479 U.S. 953 (1986);
Carlton v. Keohane, 691 F.2d 992-93 (11th Cir. 1982)(habeas
relief pursuant to constitutional due process protections is only
available where petitioner establishes that Parole Commission's
delay in holding revocation hearing was both unreasonable and
prejudicial); Harris v. Day, 649 F.2d 755, 761-62 (10th Cir.
1981); McNeal v. United States, 553 F.2d 66, 68 (10th Cir. 1977)
("to establish a legal right to habeas relief, the delay, taking
into consideration all the circumstances, must also be
prejudicial"); Gaddy v. Michael, 519 F.2d 669, 673 (4th Cir.
1975), cert. denied, 429 U.S. 998 (1976) (parole board is not
required to hold a revocation hearing within a specified period

of time if the parolee suffers no prejudice); <u>Stokes v. Pa. Board</u> <u>of Probation and Parole</u>, 2005 WL 1322802 (M.D.Pa., May 9, 2005) (petitioner must demonstrate that the delay in the parole hearing was unreasonable and prejudicial).

Here, the Appellate Division found that there was no due process violation because there was no showing of prejudice by Watlington.  Specifically, the extended FET was to begin running from petitioner's first parole eligibility date, August 3, 1998, thus, obviating any potential prejudice from the 19 month delay in holding the parole eligibility hearing.  This Court agrees. Moreover, the delay was justified by the need to complete psychological evaluations and a detailed major crimes summary report.  Therefore, Watlington has not shown that the delay was unreasonable or prejudicial, and he is not entitled to habeas relief on this ground.

C.  <u>First Amendment Retaliation Claim</u>

Watlington also asserts that the Parole Board's decision to deny parole and impose an extended FET was made in retaliation against petitioner for challenging the delays in providing Watlington a timely hearing.  He cites no factual support for this bald contention other than to argue that the Board's decision was arbitrary and capricious.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the

23

Constitution." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, petitioner must show that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Here, Watlington cannot sustain his burden of showing that his challenge to the untimeliness of his parole hearing was "a substantial, motivating factor" in the Board's decision to deny parole and impose a 20 year FET.  As set forth in this Opinion above, the Board's decision was not arbitrary and capricious. Indeed, the decision was amply supported by the record based on the escalating violence and seriousness of Watlington's crimes, his lack of insight and progress in his substance abuse and anger problems, and his prior failed opportunities on parole.

Even if Watlington could show that his appeal as to the untimeliness of his parole hearing was a substantial or motivating factor in the Board's decision, the State has proven that the

24

Board would have made the same decision absent Watlington's appeal for reasons reasonably related to a legitimate penological interest.  In Rauser, the Third Circuit held that once a plaintiff or petitioner has met his burden of proof, the burden then shifts to the prison officials to show by a preponderance of the evidence "that [they] would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  241 F.3d 334.  As stated above, Watlington's criminal history, the increasing violence of his criminal behavior, his psychological evaluations, and failed opportunities on prior parole demonstrate by more than a preponderance of the evidence that the Board would have made the same decision regardless of Watlington's challenge to the delay in holding an initial parole eligibility hearing.  Accordingly, the Court finds no First Amendment retaliation violation, and this claim will be denied for lack of substantive merit.

## V.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

25

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Consequently, no certificate of appealability shall issue.

VI.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied in its entirety, and no certificate of appealability shall issue. An appropriate order follows.


     s/ Mary L. Cooper
MARY L. COOPER
United States District Judge